I dissent. I think the court misunderstands the record in several important particulars. It is stated that defendant has been acquitted of the charges against him in the courts designated by statute to hear and determine criminal actions. It will be seen by reference to the case of Marshall v. Sitton,68 Okla. 175, 172 P. 964, where petition for rehearing was denied May 14, 1918, that mandamus was issued to J.W. Marshall, county judge, commanding a change of venue in two criminal cases pending against respondent at that time growing out of the facts involved in this proceeding. The referee's report was filed January 7, 1918. There is nothing in the record that in the slightest intimates an acquittal in either of these two cases. Again, it is stated that the board of county commissioners did not question defendant's right to the commissions claimed or refuse to pay them on the ground that he was not entitled thereto. Mr. Geo. H Johnson, one of the county commissioners, testified that Sitton presented a claim for his commissions upon civil bond which was denied on the ground that, he was not entitled thereto, and that Sitton represented to the board of county commissioners that he had an opinion from the Attorney General holding that he was entitled to such commissions, and that the board instructed the county clerk to write to the Attorney General for a copy of the letter, which Sitton claimed to have received. The letter held to the contrary.
These proceedings were instituted upon the recommendation of the Bar Commission, and a referee was appointed, who heard the evidence and filed a report, in which he found the charges to be true and recommended the disbarment or suspension of respondent. The majority opinion does not review the evidence upon which the report is based, but ignores the findings of the referee. In Town of Grove v. Haskell, 31 Okla. 77,116 P. 805, in speaking of the effect to be given the report of the referee in an original proceeding pending in this court, it was said:
"However, the report of the referee appointed to take the evidence and report the same to this court with his findings of fact and conclusions of law, would not be conclusive on either. It should and would be accorded every reasonable presumption of being correct, with the burden on the party attacking it, but to be freely set aside by the court if found to be incorrect."
In support of this rule, the court cited Girard Life Insurance, Annuity Trust Co. v. Cooper, 162 U.S. 529, 16 Sup. Ct. 879, 40 L.Ed. 1062, where it is said in the second paragraph of the syllabus:
"Findings of a master are not absolutely binding upon the court, but there is a presumption in their favor, and they will not be set aside or modified in the absence of some clear error or mistake."
In my Judgment, the court should accord to the report of the referee that weight to which it is entitled, and, in the event his findings are disapproved, some reason should be given therefor; that is, the court should review the evidence and point out wherein it fails to sustain his findings.
The opinion omits several important facts *Page 16 
which in my judgment have a bearing upon the case. The defendant admits that he was familiar with the requirements of section 1560, Rev. Laws 1910, which required county attorneys to report within ten days all moneys collected by them, and admits that he at no time reported any of the collections, While campaigning for re-election in 1912, he publicly stated that he would not claim commissions of this character and would serve the people of his county for the salary fixed by law. He also received an opinion from the Attorney General that he was not entitled to such commissions. The referee finds that moneys were paid respondent under the guise of fines and costs, when there were no fine and costs, nor any judgment of any kind unless perhaps a dismissal, which was entered long after the money was collected; that there was no record made in the court or anywhere of the amounts collected; that there was private dickering out of court in regard to matters and amounts which could only be determined by judicial action; that in one instance moneys supposed to be paid for costs was considerably more than the costs amounted to; and that all of the money was retained for several years before it was paid over. The respondent knew these moneys collected by him did not go into the general fund of the county. The larger portion belonged to the common school fund and could not lawfully be diverted to any other purpose. In one case the costs amounted to $6.20, and in another instance $19.25. If all this be true, I cannot see how it can be urged that he had a right to take these moneys and apply them to claims against the county.
When defendant failed to report these collections required by section 1560, supra, he was guilty of a misdemeanor and became liable to punishment therefor. Section 2678. Rev. Laws 1910, expressly prohibits the retention of property or funds of another to offset or pay a demand held against him, and declares that this conduct shall not be a defense in a prosecution for embezzlement. Mr. Justice Brett, who writes the majority opinion wrote the opinion for the Criminal Court of Appeals in Choate v. State, 12 Okla. Cr. 560, 160 P. 34, L. R. A. 1917A 1287, and in that case announced the view that the plea by a guardian that moneys were retained by him to offset a demand claimed against his ward amounted to a plea of, guilty to a charge of embezzlement. If that was good law in that case, it ought to be good law under the circumstances here presented. If it is embezzlement for a guardian to retain moneys belonging to his ward to offset a claim due by the ward to the guardian. I am unable to see where it would not be embezzlement for a county attorney to keep moneys belonging to the county to offset a claim against the county; but the situation shown by the report of the referee is even worse than that. The moneys he retained either belonged to the common school fund of the county, or were due to witnesses and officers to pay the costs incurred in certain litigation. I do not think the statute, making it a misdemanor for a county attorney to neglect to report moneys collected by him, makes it any less a crime for him to embezzle such moneys. If it is, a county attorney might corruptly retain public money and appropriate same to his own use with impunity. It is a distinction without a difference to say that a guardian is guilty of embezzlement when retaining the money of his ward, and to say that a county attorney commits no crime when he unlawfully retains the moneys of the county. This court should refuse to recognize any difference in persons and declare embezzlement to be a crime, whether committed by those in authority or by the humblest citizen in the land. If public office be a protection from punishment for crime of this character, a premium is placed upon dishonesty in public officials and an inducement offered to crooks and criminals to seek positions of power.
While this is not a criminal proceeding, this court possesses the undoubted power to inquire into the truth of the charge and to administer proper punishment and upon the record presented, should either say that the facts as found by the referee do not amount to conduct deserving punishment or in fairness to defendant that his findings are not supported by the evidence, and unless the court can say one if these two things, the only proper thing to do, in my judgment, is to inflict punishment commensurate with the wrong conduct proven.